## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

FRENCHPORTE IP, LLC, *et al.*,

    Plaintiffs,

    v.

MARTIN DOOR MANUFACTURING, INC., *et al.*,

    Defendants.

Civil Action No. TDC-14-0295

## MEMORANDUM OPINION

Before the Court are Defendant Martin Door Manufacturing, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative for Transfer to the District of Utah, ECF No. 7; Defendant DirectBuy, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 12; and Plaintiffs FrenchPorte IP, LLC and FrenchPorte, LLC's Motion for Jurisdictional Discovery, ECF No. 26. For the reasons set forth below, the Court DENIES Martin Door's motion, DEFERS DirectBuy's motion pending jurisdictional discovery, and DISMISSES AS MOOT FrenchPorte's motion.

## BACKGROUND AND PROCEDURAL HISTORY

This is a patent infringement action filed by FrenchPorte IP, LLC and FrenchPorte, LLC against Martin Door Manufacturing, Inc. ("Martin Door"), DirectBuy, Inc. ("DirectBuy"), and Awning Concepts Unlimited, LLC ("Awning Concepts"). FrenchPorte IP, LLC and FrenchPorte, LLC (collectively, "FrenchPorte") are Maryland limited liability companies with their principal places of business in Chevy Chase, Maryland. FrenchPorte is the assignee of nine U.S. patents. Eight of those patents—one utility and seven design patents—are for "overhead

garage doors that look just like French doors." Compl. ¶ 10, ECF No. 1.  The remaining patent is for a "pinch resistant apparatus" that prevents a person's fingers from being pinched between the joints of the garage door.  Compl. Ex. N at col. 1, line 52.   Martin Door is a California corporation with its principal place of business in Salt Lake City, Utah.  DirectBuy is an Indiana corporation with its principal place of business in Merrilville, Indiana.  Awning Concepts is a Maryland limited liability company with its principal place of business in Stevensville, Maryland; it is the registered owner of the trade name "Shore Doors & Awnings."   Awning Concepts has thus far made no appearance in the case.

In 2003, FrenchPorte began to manufacture and sell its patented garage doors.  In 2006, it developed and began to include on its doors the patented pinch-resistant apparatus.  By 2006, FrenchPorte had achieved a fair amount of success on the East Coast and was looking to expand its presence in the Midwest and Western markets.  With that aim, in May 2006, representatives from FrenchPorte met with representatives from Martin Door—a "well-established garage door manufacturer and distributor with deep roots in the Midwest and West"—to discuss a partnership. Compl. ¶ 24.  As part of those discussions, FrenchPorte "displayed [its] pinch resistance extrusion design and [a] door sample" to executives from Martin Door.  *Id.* ¶ 26. Although initially promising, the discussions ultimately went nowhere, and by 2007, "Martin [Door] was no longer even returning phone calls from FrenchPorte's CEO." *Id.* ¶ 33.

In FrenchPorte's estimation, the cause of this communication breakdown was clear.  In 2007, Martin Door began to include "FingerShield" joints on all of its residential aluminum garage doors.  FrenchPorte alleges that Martin Door's FingerShield joint is essentially the same as FrenchPorte's patented "pinch resistance extrusion design," which FrenchPorte showed to Martin Door in 2006.  And in 2009, Martin Door began to manufacture and sell the "Avignon"

garage door (later rebranded the "Athena" garage door), a door that FrenchPorte alleges is essentially identical to its patented garage door, which was displayed to Martin Door in 2006. *See* Compl. Exs. O and R.   Martin Door continues to include the FingerShield joint on its residential aluminum garage doors; it sold the Avignon/Athena garage door until at least October 16, 2013.  FrenchPorte alleges that Martin Door sold the Avignon/Athena doors and sold and continues to sell doors with the FingerShield joint specifically in Maryland through a distribution channel consisting of its authorized dealer, Awning Concepts, and a retailer, DirectBuy.

On January 30, 2014, FrenchPorte filed a patent infringement suit in this Court against Martin Door, DirectBuy, and Awning Concepts.   ECF No. 1.   In the Complaint, FrenchPorte argues that this Court has personal jurisdiction over Martin Door and DirectBuy because both have "sold and, unless restrained by this Court, will continue to sell" to Maryland residents garage doors that infringe FrenchPorte's patents. Compl. ¶¶ 6(d) and 7(d).  FrenchPorte explains that it does not know the exact volume of these sales, but that "[a]t a bare minimum," Defendants have "collectively sold between 10 and 20 infringing Martin garage doors" to Maryland residents. *Id.* ¶¶ 6(e) and 7(e).

More specifically, FrenchPorte asserts that Martin Door is subject to personal jurisdiction in Maryland because it "creat[ed] and maintain[s] a distribution channel in this State" for its allegedly infringing doors, "consisting of its authorized dealer, Awning Concepts using the trade name Shore Doors, and a retailer, DirectBuy."  Compl. ¶ 6(b).  As evidence of this distribution channel, FrenchPorte has appended to its complaint a screenshot of Martin Door's website listing Shore Doors in Stevensville, Maryland, as a Martin Door "Authorized Dealer."  Compl. Ex. A. FrenchPorte additionally asserts that Martin Door's website—through which it is, in

FrenchPorte's estimation, "doing and soliciting business" in Maryland—is another basis for personal jurisdiction. Compl. ¶ 6(c).

FrenchPorte alleges that DirectBuy is subject to personal jurisdiction in Maryland because it "creat[ed] and maintain[s] three showrooms" in Maryland—DirectBuy of Columbia, DirectBuy of Washington North, and DirectBuy of Southern Maryland—"at least in part with the intent and for the purpose" of selling Martin Door's allegedly infringing garage doors to Maryland residents. Compl. ¶ 7(b). FrenchPorte notes, however, that DirectBuy is a "members only club," and therefore "very limited information regarding the Martin Doors that DirectBuy sells is available to the public." Compl. ¶ 50.

On March 3, 2014, Martin Door filed an Answer and a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative to Transfer Venue. ECF Nos. 6 and 8. In that motion, Martin Door does not deny that its products are sold in Maryland, or that DirectBuy and Awning Concepts are retailers of Martin Door products. Instead, it argues that any connections it has with Maryland are insufficient to give rise to personal jurisdiction.[1] In this regard, Martin Door notes that it has no offices, phone listings, mailing addresses, agents, representatives, employees, property, or bank accounts in Maryland, and that it does not store any inventory in Maryland. Mot. Dismiss at 3-4. It argues that it "intentionally limits the geographic extent to which [it] delivers garage doors to exclude Maryland": Martin Door garage doors bound for Maryland are placed "with a common carrier who transports the garage door to the customer pursuant to the customer's instructions." Id. It further argues that any sales in

---

[1] Martin Door premises its improper venue claim on its contention that it does not reside in Maryland and "no substantial part of the events" occurred in this district. Mot. Dismiss at 11. Because venue would be proper if Martin Door is subject to personal jurisdiction in Maryland, see 28 U.S.C. § 1391(b)(3), Martin Door's improper venue claim is effectively subsumed by the personal jurisdiction question.

Maryland amount to "less than one-tenth of one percent" of its yearly revenues. *Id.* at 4. In regard to its internet presence, Martin Door argues that its website is "informational only" because no Martin Door products can be purchased through the site. *Id.*

On March 6, 2014, DirectBuy filed an Answer and a Motion to Dismiss for Lack of Personal Jurisdiction. ECF Nos. 11 and 12. In that motion, DirectBuy does not deny that the three showrooms FrenchPorte identified—DirectBuy of Columbia, DirectBuy of Washington North, and DirectBuy of Southern Maryland—sell Martin Door products. Rather, DirectBuy asserts that those three Maryland showrooms are "independently owned and operated franchise[s]," and therefore that DirectBuy "does not control or direct the[ir] business transactions" and "derives no revenue from the sale or use of Martin Door garage doors in Maryland." Mot. Dismiss at 2. DirectBuy thus concludes that it "has no obligation or liability related to the sale of any Martin Door garage doors" by those franchises. *Id.* Accordingly, DirectBuy asserts that it lacks sufficient contacts to be subject to personal jurisdiction in Maryland. In this regard, DirectBuy notes that it has no offices, phone listings, mailing addresses, or bank accounts in Maryland, and that it has no representatives "working in Maryland to sell Martin Door garage doors." *Id.* at 2-3.

On March 27, 2014, FrenchPorte filed a Response in Opposition to Martin Door's and DirectBuy's Motions to Dismiss for Lack of Personal Jurisdiction. ECF No. 16. On April 21, 2014, Martin Door and DirectBuy each filed a Reply to FrenchPorte's Response. ECF Nos. 20 and 21. On June 20, 2014, FrenchPorte filed a Motion for Expedited Jurisdictional Discovery seeking discovery from Martin Door, a motion that Martin Door opposed on July 10, 2014. ECF Nos. 26 and 27. On July 28, 2014, FrenchPorte filed a Reply to Martin Door's Response. ECF No. 28.

## DISCUSSION

### I.     The Timeliness of the Motions to Dismiss

On March 3, 2014, Martin Door filed its Answer at 10:30 a.m. followed by its Motion to Dismiss for Lack of Personal Jurisdiction at 10:44 a.m. *See* ECF Nos. 6 and 8.  On March 6, 2014, DirectBuy filed its Answer at 5:33 p.m. followed by its Motion to Dismiss for Lack of Personal Jurisdiction at 5:42 p.m. *See* ECF Nos. 11 and 12.  As FrenchPorte points out, *see* Opp'n Mot. Dismiss at 5, Martin Door and DirectBuy have thus failed to follow the clear requirements of Federal Rule of Civil Procedure 12(b), which directs defendants to file a motion asserting a defense under Rule 12 "*before pleading* if a responsive pleading is allowed" (emphasis added).  Under a strict reading of Rule 12, then, Martin Door's and DirectBuy's motions are untimely and, as a consequence, they have waived their personal jurisdiction defenses. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any [12(b)] defenses must be made before pleading"); Fed. R. Civ. P. 12(h)(1)(B)(i) (stating that a party waives a 12(b)(2) defense if it fails to make it by motion in accordance with the rule or include it in a responsive pleading); Steven S. Gensler, 1 Federal Rules of Civil Procedure: Rules and Commentary, Rule 12 (2014), *available at* Westlaw FRCP-RC ("There are four defenses—lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process—that are forfeited if not raised in the defendant's first response to the complaint . . . .").

However, that strict reading of Rule 12 is not warranted here.  Although Martin Door and DirectBuy could have avoided this problem by uploading their Motions before their Answers, their filing sequences are essentially a product of the constraints of the Court's electronic filing system, which requires that an answer and a motion be uploaded separately and thus

sequentially.  As a practical matter, Martin Door and DirectBuy filed their respective Answers and Motions contemporaneously, and the Court will treat them as so filed.

Treating Martin Door's and DirectBuy's Answers and Motions as contemporaneously filed does not, however, immediately resolve the question of the timeliness of the Motions to Dismiss.  A number of courts—including in this District—have deemed untimely Rule 12(b) motions filed contemporaneously with an answer. *See, e.g., Young v. Prince George's Cnty., MD*, No. DKC-11-1970, 2012 WL 1205105, at \*2 (D. Md. Apr. 10, 2012) ("[B]ecause Defendants' motion was filed contemporaneously with their 'partial answer,' treating the motion as one to dismiss pursuant to Rule 12(b)(6) is improper."); *BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F. Supp. 2d 818, 822 (S.D. Ohio 2012) ("Rule 12(b) permits only *sequential*, not *concurrent*, filing of a motion to dismiss and an answer.").  Other courts have indicated in dicta that Fed R. Civ. P. 12(b) motions *are* timely if filed contemporaneously with the answer. *See, e.g., Roque v. United States*, 857 F.2d 20, 21 (1st Cir. 1988); *Imperial Crane Servs. v. Cloverdale Equip. Co.*, No. 13-C-04750, 2013 WL 5904527 at n.7 (N.D. Ill. Nov. 4, 2013).

Although these cases appear to offer opposing interpretations of Fed R. Civ. P. 12(b), upon closer examination they can be harmonized.  Courts have read the filing requirements of Rule 12(b) strictly, and so deemed a motion filed contemporaneously with an answer as untimely, when the motion is a Rule 12(b)(6) motion; courts have given the filing requirements a more flexible interpretation, and so deemed a motion filed contemporaneously with an answer as timely, when the motion is made under Rule 12(b)(2)-(5). *Compare Young*, 2012 WL 1205105, at \*2 (requiring a 12(b)(6) motion to precede the answer), *and BAC Home Loans*, 848 F. Supp. 2d at 822 (same), *with Roque*, 857 F.2d at 21 (stating that a 12(b)(5) motion may be filed

contemporaneously with an answer), *and Imperial Crane Servs.*, 2013 WL 5904527 at n.7 (stating that a 12(b)(2) motion may be filed contemporaneously with an answer).

The implicit logic is sensible. There is more at stake in 12(b)(2)-(5) motions than in a 12(b)(6) motion. The defenses under 12(b)(2)-(5) are lost if not timely asserted; the ground for dismissal under 12(b)(6) remains available throughout a case, albeit with a different name. *See* Fed R. Civ. P. 12(c); *BAC Home Loans*, 848 F. Supp. 2d at 823 (noting, when reading the rules strictly in the context of a 12(b)(6) motion, that doing so "presents no substantive prejudice . . . because [the defendant] can simply make its arguments post-answer through another mechanism that complies with the Civil Rules"). Because, here, a strict interpretation of the procedural requirements of Rule 12 would deprive Martin Door and DirectBuy of their personal jurisdiction defense, a more permissive construction of the filing requirements is appropriate. Accordingly, the Court accepts Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, filed contemporaneously with their Answers, as timely.

**II.      Personal Jurisdiction**

**A.      Choice of Law**

In a patent case, the law of the Federal Circuit controls all substantive issues while the law of the regional circuit controls all procedural questions. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). Personal jurisdiction is generally considered a procedural question. However, the Federal Circuit has observed that personal jurisdiction is "intimately related to substantive patent law" because it is a "critical determinant" of a patentee's ability to seek redress. *Id.* Accordingly, the Federal Circuit has held that Federal Circuit law, not regional circuit law, controls a court's determination of whether it can exert

personal jurisdiction over a defendant in a patent case. *Id.* This Court therefore applies Federal Circuit law.

**B.     Standard of Review**

It is the plaintiff's burden to establish personal jurisdiction. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).   To carry that burden at the pleading stage, the plaintiff must make only a *prima facie* showing that the defendants are properly subject to this Court's jurisdiction. *Id.* In evaluating the plaintiff's showing, this Court must accept the plaintiff's uncontroverted allegations as true and must resolve any factual conflicts in the plaintiff's favor. *Id.* When the existing record is inadequate to support personal jurisdiction over a defendant, the plaintiff is entitled to jurisdictional discovery if it can demonstrate that such discovery would yield "additional facts" that would "assist the court in making the jurisdictional determination." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005). *See also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (Fed. Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.") (internal quotation marks omitted).

**C.     Legal Framework**

Under Federal Circuit precedent, a federal district court can exert personal jurisdiction over a non-resident defendant if two requirements are met.  First, jurisdiction must be allowed under the long-arm statute of the relevant state—in this case, Maryland. *See Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1343-44 (Fed. Cir. 2006). With respect to the meaning and scope of a state's long-arm statute, the Federal Circuit has "elect[ed] to defer to the interpretations of the relevant state and federal courts." *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). Second, the exercise of jurisdiction under the

9

long-arm statute must comport with federal due process. *Pennington Seed, Inc.*, 457 F.3d at 1344. Because this is a patent action and therefore exclusively a matter of federal jurisdiction, it is the due process clause of the Fifth Amendment that governs, but the Fifth Amendment analysis, as developed by the Federal Circuit, is identical to the more familiar due process analysis under the Fourteenth Amendment. *Deprenyl Animal Health, Inc. v Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002).

The Maryland Long-Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6–103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005). There may be cases, however, in which personal jurisdiction comports with federal due process but which present factual scenarios outside the scope of the long-arm statute. *Krashes v. White*, 341 A.2d 798, 804 (Md. 1975). *See also Dring v. Sullivan,* 423 F. Supp. 2d 540, 545 (D. Md. 2006) ("[T]o the extent that a defendant's activities are covered by the statutory language [of the long-arm statute], the reach of the statute extends to the outermost boundaries of the due process clause.") (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118-19 n.2 (D. Md. 1995)). Thus the jurisdictional analysis under the long-arm statute does not simply collapse into the due process analysis. *See Mackey v. Compass Mktg., Inc.,* 892 A.2d 479, 493 n. 6 (Md. 2006) (explaining that although the "long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to [ ] dispense with analysis under the long-arm statute"). The long-arm and constitutional due process requirements are, however, "interrelated," and so can be evaluated in tandem. *Geelhoed v. Jensen*, 352 A.2d 818, 821 (Md. 1976).

### D.    Personal Jurisdiction Over Martin Door

In the Complaint, FrenchPorte alleges that the following facts support a finding of personal jurisdiction over Martin Door: (1) as stated on its website, Martin Door has an authorized dealer, Awning Concepts using the trade name Shore Doors, that sells Martin Door's products in Maryland; (2) multiple DirectBuy retailers located in Maryland sell Martin Door products; and (3) at least 10-20 Martin Door garage doors have been sold in Maryland through these distributors. Compl. ¶¶ 6(b), 6(e), 7(b), and Ex. A.

Martin Door asserts in response that it has no offices, phone listings, mailing addresses, agents, representatives, employees, property, or bank accounts in Maryland, and that it does not store any inventory in Maryland. Mot. Dismiss at 3-4. However, it does not directly deny FrenchPorte's allegations. In fact, Martin Door effectively acknowledges that it sells its garage doors to Maryland residents out of its Utah headquarters. Although Martin Door explains that its business plan "intentionally limits the geographic extent to which Martin Door *delivers* garage doors to exclude Maryland," Mot. Dismiss at 6 (emphasis added), it does not, however, limit the geographic extent to which Martin Door will *sell* its garage doors. Martin Door notes that Maryland customers who wish to purchase Martin Door garage doors may do so directly from the Salt Lake City manufacturing facility. Martin Door then "places the purchaser's garage door with a common carrier who transports the garage door to the customer pursuant to the customer's instructions." *Id.* at 6-7.

FrenchPorte's allegations and Martin Door's response thus establish that Martin Door garage doors are sold to customers in Maryland. For the reasons detailed below, the Court finds that the nature and extent of those business activities satisfy the requirements of both federal due

process and the Maryland long-arm statute, such that this Court has personal jurisdiction over Martin Door.

### 1.      **Federal Due Process**

A court may exert personal jurisdiction over a nonresident defendant in keeping with due process if the defendant has "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)). Determining whether a defendant has such contacts is a fact-specific undertaking. *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92 (1978).

Personal jurisdiction is often discussed in terms of "general" or "specific" jurisdiction. A court has general personal jurisdiction when the defendant maintains "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). A court has specific personal jurisdiction when the defendant purposefully establishes minimum contacts with, and directs activities at the residents of, the forum state, and the cause of action arises out of those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476–77 (1985); *Akro Corp. v. Luker*, 45 F.3d 1541, 1545–46 (Fed. Cir. 1995). In cases similar to this one, however, the Federal Circuit has found the general/specific rubric to be of limited use. Instead, "[t]he analytical tool useful in cases in which the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of defendant's products" is the "stream of commerce theory" of personal jurisdiction. *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996) (internal quotation marks omitted). Under that theory, a defendant is subject to personal jurisdiction in a forum state if it has "'purposefully avail[ed] itself of the privilege of conducting

activities within the forum State'" by placing its products "into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The Federal Circuit adopted the "stream of commerce" theory of personal jurisdiction and applied it to patent cases in *Beverly Hills Fan Company v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). In *Beverly Hills Fan*, the plaintiff, Beverly Hills Fan Company, asserted a claim of patent infringement in Virginia against a foreign fan manufacturer—Ultec—and its U.S. importer and distributor—Royal Sovereign—alleging that the defendants were selling a ceiling fan that infringed Beverly Hills Fan's patent. *Id.* at 1560. To establish that the defendants were subject to personal jurisdiction in Virginia, Beverly Hills Fan provided evidence that at least 52 of the allegedly infringing fans were available for sale through Builder's Square, a chain store with six retail outlets in Virginia, and that at least one fan was actually sold in the state. *Id.* at 1560, 1564. Ultec, headquartered in Taiwan, and Royal, incorporated in New Jersey, each filed motions to dismiss for lack of personal jurisdiction in which they averred that they had no assets or employees in Virginia, had no agent for service of process in Virginia, and were not licensed to do business Virginia. *Id.* at 1560. Ultec also asserted that it had not directly shipped the accused fan into Virginia. *Id.* Unpersuaded by defendants' arguments, the court found that because "defendants purposefully shipped the accused fan into [the forum state] through an established distribution channel," they were subject to personal jurisdiction in that forum. *Id.* at 1565.

*Beverly Hills Fan* is dispositive here. FrenchPorte has alleged, and Martin Door has not directly refuted, that Martin Door has a distribution network in Maryland consisting of four retail

outlets—three DirectBuy showrooms and Shore Doors, which Martin Door identifies on its website as an authorized dealer—through which a minimum of 10-20 allegedly infringing doors have been sold in Maryland. The facts here thus essentially parallel those in *Beverly Hills Fan*. Indeed, if anything, the facts tie Martin Door more closely to the forum state. The manufacturer in *Beverly Hills Fan* argued that because it was at one remove from the retailers—the manufacturer shipped the fans to a U.S. distributor, which then supplied the retail outlets in Virginia—there was no evidence that the shipment of its product to Virginia was "purposeful or knowing." *Id.* at 1564. Here, by expressly announcing on its website that Shore Doors is an authorized Martin Door retailer, Martin Door has acknowledged that it is specifically aware that its products are being shipped to and sold in Maryland. Thus, Martin Door has purposefully created a distribution network to Maryland in order to create and serve a market for its products in Maryland, so is properly subject to suit here. *World-Wide Volkswagen*, 444 U.S. at 297 ("[I]f the sale of a product . . . is not simply an isolated occurrence, but arises from the efforts of [the defendant] to serve, directly or indirectly, the market for its product . . . it is not unreasonable to subject it to suit.").

Moreover, Martin Door's admission that it has an existing process to sell doors to Maryland customers directly from its Utah headquarters further establishes that it purposely directs its product in the stream of commerce to Maryland. *See* Mot. Dismiss at 2. In describing this process in an effort to establish that it has intentionally structured its business so as to "avoid[ ] the risk of being sued in Maryland," Mot. Dismiss at 7-8, Martin Door seeks to analogize its situation to that of the defendant in *World-Wide Volkswagen*. But the analogy does not hold. In *World-Wide Volkswagen*, the Court held that a New York car dealership that sold a car to a New York family that later moved to Oklahoma could not reasonably have foreseen that

14

one of its cars would cause an injury in Oklahoma, given that the relocation of the vehicle was a unilateral action by the car owner performed without the knowledge or involvement of the defendant dealership. 444 U.S. at 288, 298-89. Here, when a Maryland consumer orders a Martin Door garage door, Martin Door is aware of and indeed facilitates the transport of the product to Maryland by providing the garage door to a common carrier with the customer's instructions to ship it to Maryland. Mot. Dismiss at 3-4. Martin Door thus knows that its actions will lead to delivery of the product to its customer in Maryland, and therefore this case is easily distinguishable from the kind of unilateral action rejected as a basis for jurisdiction in *World-Wide Volkswagen*. *See Beverly Hills Fan*, 21 F.3d at 1566 (noting that personal jurisdiction was proper when defendant placed the fan in the stream of commerce and "knew the likely destination of the products").

The fact that, as Martin Door asserts, FrenchPorte does not establish that there is an agency relationship between Martin Door and one of its Maryland retailers—specifically, Awning Concepts—is beside the point. *See* Resp. to Mot. for Juris. Disc. at 3-4. As illustrated by *Beverly Hills Fan*, the stream-of-commerce theory of personal jurisdiction makes a defendant subject to jurisdiction based on its purposeful placement of its products into the market of the forum state. It does not require a defendant's physical presence in the state, either personally or through an agent. *See Beverly Hills Fan*, 21 F.3d at 1560 (noting that neither defendant was incorporated or had an agent in the forum state).

Martin Door also suggests that any business it does with Maryland is too insignificant to confer personal jurisdiction. Martin Door notes that in any given year, "[r]evenue from sales by Martin Door of garage doors to customers in Maryland" is "less than one-tenth of one percent" of its overall revenue. Mot. Dismiss at 4. As a due process matter, however, there is no

15

requirement that the flow of commerce reach a particular threshold volume. *See Beverly Hills Fan*, 21 F.3d at 1571 (finding personal jurisdiction from the presence of approximately 50 fans in the state). Any showing that a defendant's business in a forum state generates "substantial revenue" is required only by a state long-arm statute, not due process.[2] *See id.* (analyzing the "substantial revenue" requirement contained in Virginia's long-arm statute); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 206 (D.C. Cir. 1981) (considering the "substantial revenue" requirement contained in the District of Columbia's long-arm statute). For due process, it is enough that Martin Door has placed its products into the stream of commerce and done so with the knowledge that one mouth of that stream is in the forum state. In doing so, Martin Door has purposefully and successfully availed itself of the privilege of doing business in Maryland, and so has the "certain minimum contacts" with the state necessary to make it subject to personal jurisdiction here. *International Shoe, Co.*, 326 U.S. at 316.

Even if, as here, a plaintiff can establish that a defendant has the requisite minimum contacts to be subject to personal jurisdiction in a particular court, the defendant can still defeat jurisdiction "by marshaling a compelling case against jurisdiction on the grounds that its exercise would be unreasonable, [and] contrary to concepts of fair play and substantial justice." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d at 429. This "unreasonableness" test is a "multi-factored balancing test" weighing the burden the case places on the defendant against the plaintiff's interest in a convenient forum and the forum's interest in resolving the controversy. *Id.*; *see generally Burger King*, 471 U.S. at 477. It is a difficult test for a defendant to pass: "these cases are limited to the rare situation in which the plaintiff's interest and the state's

---

[2] In Maryland, a showing of substantial revenue is required under only one section of the long-arm statute: § 6-103(b)(4).

interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568.

In arguing that a finding of personal jurisdiction in Maryland would be unreasonable, Martin Door largely rehashes its due process arguments. Martin Door adds that, because it is headquartered "more than a thousand miles away," defending against the suit is unduly burdensome. Mot. Dismiss at 9. Martin Door also asserts that because, in its estimation, it has "no material contacts" with Maryland, this Court has no legitimate interest in resolving this dispute, nor are there any social policy concerns that would override these other factors. *Id.* at 10.

These arguments are unpersuasive. Even as early as 1957, the Supreme Court noted that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in [another state]." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). That is all the more true now. Moreover, Martin Door is a substantial enterprise with a global reach, manufacturing over 600 garage doors per day and exporting its products to nearly 100 countries. *See* Compl. Ex. O. In light of its international presence, Martin Door presumably has the resources and infrastructure to defend an out-of-state suit. Furthermore, Maryland has a substantial and legitimate interest in the resolution of this dispute, both because FrenchPorte is a Maryland company and because each state has an abiding interest in "discouraging injury within its borders." *Deprenyl*, 297 F.3d at 1356. Consequently, considering all of the relevant factors, this is not the "rare case" in which the defendant has demonstrated that subjecting it to personal jurisdiction in this Court would be so unreasonable as to violate a sense of fair play and deprive the defendant of substantial justice.

### 2.      Maryland Long-Arm Statute

Having established that personal jurisdiction over Martin Door comports with due

process, the Court must next consider whether it is also authorized by at least one prong of

Maryland's long-arm statute, which provides, in relevant part:

> (a) If jurisdiction over a person is based solely upon this section,
> he may be sued only on a cause of action arising from any act
> enumerated in this section.
> (b) A court may exercise personal jurisdiction over a person, who
> directly or by an agent:
> (1) Transacts any business or performs any character of work
> or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured
> products in the State;
> (3) Causes tortious injury in the State by an act or omission in
> the State;
> (4) Causes tortious injury in the State or outside of the State by
> an act or omission outside the State if he regularly does or
> solicits business, engages in any other persistent course of
> conduct in the State or derives substantial revenue from
> goods, food, services, or manufactured products used or
> consumed in the State;

Md. Code Ann., Cts. & Jud. Proc. § 6-103 (West 2014).

In addition, "[t]he provisions in this section apply to computer information and computer

programs in the same manner as they apply to goods and services." *Id.* § 6-103(c)(2).

A plaintiff is required, in either its complaint or its opposition to a Rule 12(b)(2) motion,

to identify the specific provision(s) of the long-arm statute that authorizes jurisdiction. *See*

*Ottenheimer Publishers, Inc. v. Playmore, Inc.,* 158 F. Supp. 2d 649, 652 (D. Md. 2001);

*Johansson Corp. v. Bowness Const. Co.,* 304 F. Supp. 2d 701, 704 n. 1 (D. Md. 2004).

Believing that, in Maryland, the long-arm analysis "collapses" into the due process analysis,

(Opp'n Mot. Dismiss at 6), FrenchPorte has not specifically identified the particular provisions

18

of the long-arm statute that it believes confer jurisdiction. However, the allegations in the Complaint track the language of the statute closely enough for the Court to draw the relevant conclusions.

Echoing the language of § 6-103(b)(1), FrenchPorte asserts in its Complaint that this Court has personal jurisdiction over Martin Door because it "transacts business in the State of Maryland." Compl. ¶ 6(a). FrenchPorte also asserts that this Court has personal jurisdiction over Martin Door because it has "caused and is causing tortious injury in this State," tracking the language of § 6-103(b)(3). *Id.* ¶ 6(b). Drawing on the language of § 6-103(b)(4), FrenchPorte further asserts that this Court has personal jurisdiction over Martin Door because it has "caused and is causing tortious injury in the State . . . and outside this State" by "deriving substantial revenue from the use in this State . . . of 'computer information' and 'computer programs.'" *Id.* ¶ 6(c). And in its Response to Defendants' Motions, FrenchPorte asserts that § 6-103(b)(2) "does not exempt one who supplies . . . goods or products in Maryland by using common carriers," and so, by implication, asserts that this Court has personal jurisdiction over Martin Door under § 6-103(b)(2) because Martin Door "[c]ontracts to supply goods, food, services, or manufactured products in the State." Resp. at 15.

Although FrenchPorte alleges jurisdiction under four provisions of the long-arm statute, only one provision need be satisfied for this Court to exercise jurisdiction. *CSS Antenna, Inc. v. Amphenol-Tuchel Electronics, GmbH*, 764 F. Supp. 2d 745, 748-49 (D. Md. 2011) (citing *Bahn v. Chicago Motor Club Ins. Co.*, 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993)). Here, for the reasons outlined below, the Court finds that FrenchPorte's allegations satisfy the requirements of § 6-103(b)(1), so an analysis of the applicability of the remaining long-arm provisions is unnecessary.

Section 6-103(b)(1) confers personal jurisdiction over a defendant who "[t]ransacts any business" in Maryland. This is not a demanding standard. A nonresident company or individual who has never entered the state, either personally or through an agent, may nevertheless be deemed to have transacted business in Maryland. *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 141 (D. Md. 1981). A single transaction may suffice. *Jason Pharm., Inc., v. Jianas Bros. Packaging Co.*, 617 A.2d 1125, 1128-29 (Md. 1993) (finding that a one-transaction contract was sufficient basis for personal jurisdiction). All that is required is a showing that the defendant has engaged in some "actions that culminate in purposeful activity within the state" relating to one or more elements of the cause of action. *Aphena Pharma Solutions—Maryland LLC v. Biozone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012) (quoting *Bahn,* 634 A.2d at 67). Thus, Martin Door is subject to personal jurisdiction under § 6-103(b)(1) if it has engaged in actions that culminate in purposeful activity relating to selling its allegedly infringing products within the state of Maryland. [3]

Martin Door's creation of a distribution network leading to Maryland, including tapping Awning Concepts as an "Authorized Dealer," sending its product in the flow of commerce to DirectBuy retailers in Maryland, and arranging for common-carrier shipments of its product to Maryland customers, culminated in the sale of at least 10-20 garage doors to Maryland retailers and customers. Such deliberate and successful efforts to access the Maryland market necessarily culminate in purposeful activity within the state sufficient to constitute transacting business under § 6-103(b)(1). *See Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F. Supp. 364, 368-70 & n.14 (D. Md. 1993) (finding personal jurisdiction under § 6-103(b)(1) over a non-resident

---

[3] Plainly, this statutory determination is intertwined with the constitutional due process analysis. *See CSR, Ltd. v. Taylor,* 983 A.2d 492, 502-03 (Md. 2009) (explaining that § 6-103(b)(1) "must be read with a constitutional gloss").

company with national advertising that led to a sale by phone and mail of its product to a Maryland customer and shipment of that product into Maryland through a common carrier); *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 319-20 (D. Md. 1983) (finding that, under a combined statutory and constitutional analysis, a company that had placed its products in the stream of commerce had "purposely availed itself of the privilege of selling within [Maryland]" and so was subject to personal jurisdiction).

### E.      Personal Jurisdiction Over Direct Buy

Determining whether there is personal jurisdiction over DirectBuy, under both the due process and Maryland long-arm statute analyses, is a more difficult enterprise. As FrenchPorte alleges and DirectBuy does not deny, there are three DirectBuy franchises in Maryland that sell Martin Door's allegedly infringing products. However, "the mere fact that a franchisor has franchisees in a particular state does not subject it to that state's jurisdiction." *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 114 (D.D.C. 2011) (quoting *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 700 (N.D. Ill. 2008)). As a matter of due process, there must be evidence beyond the mere existence of the franchise agreement that the defendant has deliberately reached out and "purposefully direct[ed]" its activity toward the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 621 (D. Md. 1998) (same).

As for the long-arm statute, FrenchPorte contends that there is personal jurisdiction over DirectBuy pursuant to § 6-103(b)(1) (transacting business), § 6-103(b)(3) (causing tortious injury), and § 6-103(b)(4) (causing tortious injury by deriving substantial revenue from the use in this State of "computer information" and "computer programs"). *See* Compl. ¶¶ 7(a)-(c). But, as with due process, the mere fact that a franchisor has a franchise in Maryland does not make it

subject to personal jurisdiction here. Instead, the franchise agreement must "impose[] significant contractual duties," such as "reporting and payment obligations" in order to tether the franchisor to the actions of the franchisee. *Choice Hotels*, 23 F. Supp. 2d at 621.

Here, DirectBuy asserts that its Maryland franchises are independently owned and operated, and that DirectBuy "does not control or direct the[ir] business transactions." Mot. Dismiss at 2. Although DirectBuy may not control its franchisee's "business transactions"—a term that itself requires illumination—it may maintain a degree of control over those franchises and impose on them contractual duties that would make DirectBuy susceptible to personal jurisdiction in Maryland. As the record currently stands, however, this Court has no information about DirectBuy's franchise agreements with its Maryland franchises, and so cannot determine if exerting personal jurisdiction over DirectBuy would be consistent with federal due process and the requirements of Maryland's long-arm statute.[4]

It is the plaintiff's burden to make a *prima facie* showing that a defendant is subject to personal jurisdiction in plaintiff's chosen forum. In this case, however, the crucial information— the exact contours of DirectBuy's franchisor-franchisee relationship—was not available to FrenchPorte at the time FrenchPorte filed its complaint. Because FrenchPorte's assertion of personal jurisdiction is not plainly frivolous, and because there are easily obtainable, additional facts that would enable this Court to resolve the personal jurisdiction question, the Court accordingly orders limited jurisdictional discovery from DirectBuy, the terms of which are

---

[4] The Court does not find personal jurisdiction over DirectBuy by virtue of its computer activities. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4), (c). FrenchPorte has made no showing that DirectBuy has a web presence, much less that its web presence is anything other than the kind of "passive" presence that does not provide grounds for personal jurisdiction. *Allcarrier Worldwide Servs. Inc. v. United Network Equip. Dealer Ass'n,* 812 F. Supp. 2d 676, 684 (D. Md. 2011).

outlined in the accompanying order. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) ("Discovery under the Federal Rules of Civil Procedure is, of course, broad in scope and freely permitted . . . [and] . . . limited discovery may be warranted to explore jurisdictional facts").

## III.  Martin Door's Motion in the Alternative to Transfer Venue

In the alternative, Martin Door moves to transfer venue under 28 U.S.C. § 1404(a) to the District of Utah.  28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Because transfer of venue is a procedural, not substantive, question, the law of the regional circuit controls.  *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).  It is the moving party's burden—here, Martin Door—to show that, on balance, case-specific factors warrant that the case be transferred to another forum.  *See Cross v. Fleet Reserve Ass'n Pension Plan,* 383 F. Supp. 2d 852, 856 (D. Md. 2005).  To carry that burden, "the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty Constr. Co.,* 198 F. Supp. 2d 710, 711 (D. Md. 2002) (internal quotation marks omitted).  This is a difficult task: "deference is generally given to a plaintiff's choice of forum," *CoStar Realty Info., Inc. v. Meissner,* 604 F. Supp. 2d 757, 773 (D. Md. 2009), and that choice "should rarely be disturbed." *Collins v. Straight,* 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1946)).

In deciding a motion to transfer venue, the district court must weigh a number of case-specific factors, including "[1] the private interest of the litigant . . .[2] the relative ease of access

to sources of proof; [and] [3] the cost of obtaining attendance of willing [and unwilling] witnesses. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).   Also relevant is the "local interest in having a localized controversies settled at home." *Brown v. Stallworth*, 235 F. Supp. 2d 453, 456 (D. Md. 2002) (quoting *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 n.4 (D. Md. 1998)).

Martin Door argues that Utah is a more appropriate venue for this case because "all of its files, sales and revenue records, technical information, [and] likely witnesses [are] in Utah." Mot. Dismiss at 11-12.  In addition, Martin Door contends that FrenchPorte's choice of forum should be given little weight because "none of the conduct complained of occurred in the forum selected." *Id.* at 12.   FrenchPorte counters that Utah would be "extremely inconvenient" for its principals, all of whom live and work in Maryland, and emphasizes that its choice of forum is to be given "substantial, if not controlling, weight." Opp'n Mot. Dismiss at 19-20.   Based on these arguments, the convenience factor is effectively neutral.

Martin Door's insistence that this case is unconnected to Maryland is similarly not persuasive.   According to FrenchPorte's uncontested allegations, there has been offending conduct in Maryland, namely the sale of Martin Door products that FrenchPorte alleges infringe upon its patents.  Furthermore, FrenchPorte is a Maryland company, a fact that provides a clear connection between this case and this forum. *See Dicken v. United States*, 862 F. Supp. 91, 93 (D. Md. 1994) (explaining that the relative convenience of the parties as a "relevant transfer factor" is "chiefly operative in cases where the plaintiff chooses a forum away from either party's home").  Martin Door's arguments in favor of transferring venue thus do not overcome its heavy burden.

## CONCLUSION

For the foregoing reasons, Martin Door's Motion to Dismiss or, in the Alternative to Transfer Venue is DENIED.   The Court DEFERS DirectBuy's Motion to Dismiss pending jurisdictional discovery, and DISMISSES AS MOOT FrenchPorte's Motion for Jurisdictional Discovery as to Martin Door.  A separate order will follow.

Date: 8/14/2014

THEODORE D. CHUANG
United States District Judge